IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PARK NATIONAL CORPORATION, VISION-PARK PROPERTIES, LLC, and SE PROPERTY HOLDINGS, LLC,<br>*Plaintiffs*,<br>*v.*<br>LEVIN PAPANTONIO PROCTOR BUCHANAN O'BRIEN BARR MOUGEY, P.A.; BRIAN H. BARR; BRANDON BOGLE; and WESLEY BOWDEN,<br>*Defendants.* | Civil Action No: 2:26-cv-00965-SDM-KAJ<br>Chief Judge Sarah D. Morrison<br>Magistrate Judge Kimberly A. Jolson |

**DEFENDANTS LEVIN PAPANTONIO PROCTOR BUCHANAN O'BRIEN BARR & MOUGEY, P.A.; BRIAN H. BARR; BRANDON BOGLE; AND WESLEY BOWDEN'S MOTION TO DISMISS**

All Defendants respectfully move the Court to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).

The individual Defendants are not parties to Plaintiffs' Tolling Agreement with Levin Papantonio. Thus, Plaintiffs' claims against the individual Defendants are time-barred under any applicable statute of limitations. And, in the absence of viable claims against the individual Defendants, Plaintiffs' malpractice claim against Levin Papantonio fails as a matter of law. Further, the claim against the firm must be dismissed because Plaintiffs could not recover in the underlying litigation against BP under the Oil Pollution Act, and therefore failed to state a claim as a matter of law. No amendment by Plaintiffs can surmount these hurdles.

For these reasons, Defendants respectfully request that this Court dismiss the Complaint.

Dated: October 16, 2026

Respectfully submitted,

*/s/ David J. Butler*
David J. Butler (0068455) (Trial Attorney)
David C. Roper (0099782)
TAFT STETTINIUS & HOLLISTER LLP
41 South High Street, Suite 1800
Columbus, Ohio 43215-6106
Telephone: (614) 221-2838
dbutler@taftlaw.com
droper@taftlaw.com

John M. Degnan (*pro hac vice forthcoming*)
Jason R. Asmus (*pro hac vice forthcoming*)
Hannah S. Fereshtehkhou (*pro hac vice forthcoming*)
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2210
Telephone: (612) 977-8400
jdegnan@taftlaw.com
jasmus@taftlaw.com
hfereshtehkhou@taftlaw.com

William F. Cash III (0084482)
LEVIN PAPANTONIO PROCTOR BUCHANAN O'BRIEN BARR MOUGEY, P.A.
316 S. Baylen Street #600
Pensacola, Florida 32502
Telephone: (850) 435-7059
bcash@levinlaw.com

*Counsel for Defendants*

# MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## I. INTRODUCTION.

Plaintiffs' action for legal malpractice comes too late as to Barr, Bogle, and Bowden—the "Individual Defendants." And this is fatal for Plaintiffs' legal malpractice claim against Levin Papantonio.

Under Ohio law, individual lawyers are necessary defendants in a legal malpractice case. The only way to name a law firm as a defendant is to also name at least one individual lawyer. But the statute of limitations ran nearly six years ago on the Individual Defendants. And while there is a tolling agreement between the Plaintiffs and Levin Papantonio, the Individual Defendants are not parties to or named in that agreement. Park National and its subsidiaries—all sophisticated entities, fully represented by independent counsel—negotiated and signed this tolling agreement. Accordingly, the claim against the Individual Defendants must be dismissed.

Because Ohio law requires a plaintiff suing a law firm to maintain a viable claim against some of its individual attorneys, and because Plaintiffs cannot do that, the claim against Levin Papantonio also must be dismissed.

This action should be dismissed for another reason: malpractice plaintiffs have to show that their underlying litigation would have been successful but for the alleged negligence of the defendants. Plaintiffs cannot do that either, because the law that has developed regarding the Oil Pollution Act ("OPA") shows that Plaintiffs do not have a remedy under OPA. Courts have concluded that OPA's economic damages provision requires a direct, causal connection between oil pollution and specific economic losses. Maybe Plaintiffs' borrowers had a claim against BP. But Plaintiffs' claim is *derivative* of those claims that belonged to *other businesses*. Defendants are not aware of any court in the United States that has allowed a bank's derivative claims to

proceed under OPA. Because Plaintiffs could not have prevailed against BP, Plaintiffs cannot prevail in this forum either.

Plaintiffs' entire action should be dismissed.

## II. BACKGROUND.[1]

### A. The Parties

Plaintiff Park National Corporation is an Ohio financial holding company. [Complaint, ECF No. 1, ¶ 1.] Plaintiffs Vision-Park Properties, LLC ("VPP") and SE Property Holdings, LLC ("SEPH") are wholly-owned subsidiaries of Park National that provide commercial banking services to businesses and individuals nationwide. [*Id.*] All three have principal places of business in Ohio and are citizens of Ohio. [*Id.* at ¶¶ 9–11.]

For purposes of this motion, Park National, VPP, and SEPH occupy the same position and their claims contain the same fatal defects. For the remainder of this brief, they will simply be referred to together as "Park National."

Levin Papantonio is a Florida professional association with its principal place of business in Pensacola, Florida. [*Id.* at ¶ 12.] The Individual Defendants are each citizens of Florida. [*Id.* at ¶¶ 12–15.]

### B. Oil Spill and Park National's Claim to BP Claim Program

In 2010, the Deepwater Horizon drilling platform operated in part by BP Exploration and Production exploded and sank, causing a massive oil spill in the Gulf of Mexico. [*Id.* at ¶ 2.] As alleged throughout the Complaint, Park National incurred various losses in 2010 and in subsequent years. [*Id.* at ¶ 5.]

---

[1] Defendants dispute many allegations in the Complaint; however, the Court must accept all well pleaded allegations as true at this stage.

Park National hired Levin Papantonio in December 2012 to pursue damages in the wake of the spill. [*Id.* at ¶ 40.] Around the same time, a Claims Program was established for the submission of claims to BP. [*Id.* at ¶ 41.]

Park National, with Levin Papantonio's help, submitted a claim form to the BP Claims Program. [*Id.* at ¶ 42.] In the form, Park National stated that it and its subsidiaries' losses were incurred in Newark, Ohio. [*Id.*] On January 17, 2013, Defendants sent a letter to the BP Claims Program, providing a presentment of Park National's claim under OPA. [*Id.* at ¶ 43]

### C. Park National's Underlying Litigation Against BP

There is no right to sue under OPA until 90 days after presentment. 33 U.S.C. § 2713(c)(2). Promptly after the 90 days ran, Levin Papantonio, acting on behalf of Park National, sued BP in the Northern District of Florida. [*Id.* at ¶ 46.] Park National alleges that the oil spill caused economic loss to it, including by an increase in loan charge-offs subsequent to the spill, loss in value of foreclosed property, and losses from non-performing loans from customers impacted by the spill and who were no longer able to make timely payments. [*Id.* at ¶¶ 71–75.] "[U]ltimately all losses incurred are on [Park National's] books" because of its "100% ownership" of VPP and SEPH. [*Id.* at ¶ 49.]

Park National's case was transferred to the MDL Court in Louisiana. [*Id.* at ¶¶ 6, 79.] Levin Papantonio continued to represent Park National there. [*Id.* at ¶ 80.] Park National's case remained on file for five years, and Park National does not allege any negligence during those five years.

However, on January 11, 2018, the MDL Court entered Pretrial Order No. 65 ("PTO 65"), which required hundreds of plaintiffs, including Park National, to submit sworn statements on damages and causation. [*Id.* at ¶ 83.] Levin Papantonio did not file a statement for Park National by the deadline of April 11, 2018. [*Id.*]

Then, on May 25, 2018, the MDL Court issued a Show Cause Order regarding compliance with PTO 65, directing those plaintiffs who had not filed a sworn statement to show cause by June 15, 2018 why the MDL Court should not dismiss their claims with prejudice. [*Id.* at ¶ 86.] Levin Papantonio did not file a response to the Show Cause Order. [*Id.* at ¶ 87.] On July 10, 2018, the MDL Court dismissed Park National's case with prejudice. [*Id.* at ¶ 88.]

Levin Papantonio appealed the MDL Court's dismissal order to the Fifth Circuit Court of Appeals. [*Id.* at ¶ 89.] On February 13, 2020, the Fifth Circuit affirmed the dismissal. [*Id.*]

### D. The Tolling Agreement

On January 27, 2020, before the Fifth Circuit issued its decision, Park National and Levin Papantonio entered into a Tolling Agreement. [*Id.* at ¶ 90; ECF No. 1-11.] In this agreement, those parties agreed to toll the running of the statute of limitations until either party chose to end the agreement. [ECF No. 1-11, ¶¶ 2, 3.]

Critically, *only* the Park National entities and Levin Papantonio entered into that agreement:

> **TOLLING AGREEMENT**
>
> This Tolling Agreement ("Agreement") is made effective as of January 27, 2020 (the "Effective Date"), among PARK NATIONAL CORPORATION, VISION PARK PROPERTIES, L.L.C., SE PROPERTY HOLDINGS, L.L.C., individually and as successor in interest to VISION BANK (collectively, "Park National"), on the one hand, and LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A. ("Levin Papantonio"), on the other hand. Park National and Levin Papantonio are collectively referred to herein as the "Parties."

[*Id*. at 1.]

The agreement is expressly signed "on behalf of" the named parties only:

> 10. Each of the undersigned counsel hereby represents and warrants that he or she is authorized to execute this Tolling Agreement on behalf of the Parties to this Tolling Agreement.

[*Id*. at ¶ 10.]

And the signature block show that the agreement is signed only by the named corporate parties, with the signature affixed "by" an attorney for that party:

> **SCHLAM STONE & DOLAN LLP**
>
> By: ____________________
> Erik Groothuis, Esq.
> 26 Broadway, 19th Floor
> New York, NY 10004
> egroothuis@schlamstone.com
>
> *Attorneys for Park National*
>
> **LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**
>
> By: ____________________
> Wesley A. Bowden, Esq.
> 316 S. Baylen Street, Suite 600
> Pensacola, FL 32502
> wbowden@levinlaw.com
>
> *Attorneys for Levin Papantonio*

[*Id*. at 5.]

Nowhere in the Tolling Agreement do any of the Individual Defendants appear as parties, or sign in their own capacities. Moreover, the claims that are tolled are defined as "claims against Levin Papantonio," and the right Park National retained was to bring suit and seek relief "against

Levin Papantonio." [*Id.* at ¶¶ 1(a), 3.] Nowhere in the Tolling Agreement does it purport to toll any of the claims against the Individual Defendants or permit suit against them later.

On June 4, 2026, Levin Papantonio sent written notice of the termination of the Tolling Agreement, and on August 11, 2026, Park National brought this action. [ECF No. 1, ¶¶ 94, 102.]

## III. LEGAL STANDARD.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Anderson v. Microsoft Corp.*, No. 1:14-CV-763, 2015 WL 1969403, at *3 (S.D. Ohio May 1, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Further, "[t]he statute of limitations, although an affirmative defense, may be the basis for dismissal under Rule 12(b)(6) when the facts are definitively ascertainable from the plaintiff's complaint and conclusively establish the affirmative defense." *Frisch v. Nationwide Mut. Ins. Co.*, No. 2:12-CV-415, 2012 WL 5595207, at *8 (S.D. Ohio Nov. 15, 2012) (citing *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009)), *aff'd*, 553 F. App'x 477 (6th Cir. 2014).

## IV. ARGUMENT.

Park National's claim must be dismissed for two reasons: (1) the claim is time-barred against the Individual Defendants, and Park National cannot sustain a claim against Levin

Papantonio without the individuals in the suit; and (2) Park National's underlying suit against BP could not have succeeded even absent the alleged legal negligence.

As a threshold matter, and explained below, Ohio substantive law applies to Park National's malpractice claim. Under Ohio law, the Individual Defendants are not bound by the Tolling Agreement because they are not parties to it. Thus, Park National's claim against the Individual Defendants is barred by Ohio's one-year statute of limitations for malpractice claims. And because the Individual Defendants must be dismissed, Park National cannot sustain a claim of malpractice against Levin Papantonio either. Thus, Levin Papantonio must also be dismissed.

Additionally, this action must be dismissed because Park National fails to state a claim of malpractice. Park National does not—and cannot—show that it can recover under OPA.

**A. The Individual Defendants are not bound by the Tolling Agreement, and the claim against them is time-barred.**

The Individual Defendants are not parties or signatories to the Tolling Agreement, and therefore under Ohio law they are not bound by the Tolling Agreement.

A tolling agreement is subject to judicial construction, like any other contract. "It is well-settled that common words appearing in a written instrument are to be given their plain meaning." *Alexander v. Buckeye Pipe Line Co.,* 374 N.E.2d 146 (Ohio 1978). Where a tolling agreement omits individuals as parties, the plain meaning is that the individuals are not bound by it.

Ohio courts have repeatedly reached that conclusion. In *Taft, Stettinius, & Hollister, LLP v. Calabrese*, the court reviewed a tolling agreement between a claimant and a law firm. 69 N.E.3d 72, 79–80 (Ohio Ct. App. 2016). The claimant argued that the tolling agreement also tolled the limitations period for his claim against an individual attorney defendant. *Id.* The named parties to the tolling agreement were the claimant and law firm—the attorney was not named in the tolling

agreement. *Id.* Because of this, the court concluded that "[u]nder the plain meaning of these words, the tolling agreement did not toll the statute of limitations against [the attorney]." *Id.*

Another Ohio court applied *Calabrese* to a similar situation and reached the same conclusion. In *Seniah Corp. v. Buckingham, Doolittle & Burroughs, LLP*, on an appeal from a grant of summary judgment dismissing claimant's malpractice action, the court considered whether a tolling agreement extended the statute of limitations for the malpractice claim against the individual attorney. 109 N.E.3d 69, 79–80 (Ohio Ct. App. 2018). The tolling agreement was only between claimant and the law firm, but also purported to include the firm's "shareholders, members, officers, directors," and other individuals. *Id.* at 74–75. The attorney was not expressly named as a party. *Id.*

Even with the additional language attempting to rope in "shareholders, members" and other individuals—language not present in Park National's Tolling Agreement—the court concluded that "the plain language of the Tolling Agreement does not toll the statute of limitations against [the attorney]," because he was not named as a party, he did not sign it, and his own firm had no authority to bind him to the agreement. *Id.* at 79–83.

*Calabrese* and *Seniah* are controlling. Like in those cases, the Individual Defendants are not parties to the Tolling Agreement, so they are not bound by its terms.

Under Ohio law, "the statute of limitations for a legal-malpractice action is one year from when the cause of action accrued." *Calabrese*, 69 N.E.3d 72, 78 (citing Ohio Rev. Code § 2305.11(A)). "[A]n action for legal malpractice accrues and the statute of limitations begins to run when [1] there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or [2] when the attorney-client relationship for

that particular transaction or undertaking terminates, whichever occurs later." *Ohio Fresh Eggs, LLC v. Smith & Kramer, P.C.*, No. 2:20-CV-5267, 2021 WL 3076397, at *5 (S.D. Ohio July 21, 2021) (quoting *Zimmie v. Calfee, Halter & Griswold*, 538 N.E.2d 398, 401 (Ohio 1989)).

Under either means of accrual, Park National's claim against the Individual Defendants is time-barred. At the very latest, Park National's claim against any party accrued on February 13, 2020, the date the Fifth Circuit issued its decision. By that date, Park National knew there was a cognizable event giving rise to its injury, and that date is when its relationship with all Defendants ceased. Under Ohio's one-year statute of limitations for malpractice, Park National had until February 13, 2021 to bring a claim against the Individual Defendants.

But Park National filed this action against the Individual Defendants nearly six years after its claim accrued. Its claim is thus time-barred against the Individual Defendants, and it must be dismissed with prejudice.

**B. Because the Individual Defendants must be dismissed, Park National cannot maintain a claim against Levin Papantonio either.**

The dismissal of the Individual Defendants is fatal to Park National's claim against Levin Papantonio. In Ohio, "a law firm does not engage in the practice of law and therefore cannot commit legal malpractice directly." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth,* 913 N.E.2d 939, 940 (Ohio 2009). Further, "a law firm is not vicariously liable for legal malpractice unless one of its principals or associates is liable for legal malpractice." *Id*.

As a result, in the absence of a claim against an individual attorney, Park National's claim against Levin Papantonio fails as a matter of law. *See Calabrese*, 69 N.E.3d at 79–80. Applying *Wuerth*, the *Calabrese* court affirmed summary judgment for the attorney and his firm, too. The court explained that because the tolling agreement did not include the individual, the plaintiff "cannot maintain a malpractice claim solely against [the firm]—whether it was timely or not." *Id.*

*Wuerth* and *Calabrese* require the same result here. Because the Tolling Agreement does not include these Individual Defendants, they must be dismissed. Park National does not allege any tolled, viable claims against any other lawyers than the three Individual Defendants. And in the absence of a viable claim against any individual attorney, Park National cannot maintain a malpractice claim solely against Levin Papantonio. Accordingly, Park National's claim against Levin Papantonio should be dismissed with prejudice.

### C. Choice of law analysis.

In an effort to avoid the clear consequences above, Park National may now try to disavow its selection of an Ohio forum and its election of Ohio law in the Complaint. ("Under Ohio law, . . . Defendants are liable to Plaintiffs for legal malpractice." [ECF No. 1, at ¶ 102]; "Park stated that it and its subsidiaries' losses were incurred in Newark, Ohio . . . ." [*Id*. at ¶ 42.])

Ohio law applies here both based on Park National's acquiescence and Ohio's choice-of-law analysis. The Court should conclude that Ohio law controls and should apply it.

#### i. The parties acquiesce to Ohio law.

While diversity jurisdiction generally raises choice-of-law issues, "[w]hen parties acquiesce to the application of a particular state's law, courts need not address choice of law questions." *Asp v. Toshiba Am. Consumer Prods., LLC*, 616 F. Supp. 2d 721, 726 (S.D. Ohio 2008) (citing *GBJ Corp. v. Eastern Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998)).

Here, Park National has acquiesced to Ohio law, because it brought its legal malpractice claim expressly under Ohio law. [ECF No. 1, ¶ 102.] Defendants do not dispute the application of Ohio law. Thus, it is appropriate for this Court to apply Ohio law to Park National's claims. *See Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 949 n. 4 (S.D. Ohio 2001) ("Since the parties have not raised that argument [that another state's law applies] and, further, given that

they have relied upon the law of Ohio, this Court will apply the law of this state."); *Mason v. Hard*, No. 2:23-CV-2307, 2025 WL 2605601, at *4 (S.D. Ohio Aug. 28, 2025) (applying Ohio law in diversity case where neither party argued that choice-of-law rules required the court to apply another state's substantive law).

**ii. Ohio law applies under Ohio's choice-of-law analysis.**

Even under Ohio's choice-of-law rules—applied as the forum state—Ohio's substantive law and statute of limitations apply here. *See Mukamal v. Columbus Life Ins. Co.*, No. 1:23-CV-122, 2024 WL 149218, at *3 (S.D. Ohio Jan. 12, 2024) ("It is well-established that federal courts sitting in diversity must apply the choice-of-law rules of the forum state." (quotation omitted)).

**iii. Ohio substantive law applies.**

Park National's legal malpractice claim is a tort claim. [ECF No. 1 at 24.] Ohio has adopted the Restatement approach to tort choice-of-law. *Badgett v. Schulman*, No. 3:12-CV-1135, 2016 WL 4196680, at *2 (N.D. Ohio Aug. 9, 2016) (citing *Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St. 3d 339, 341–42 (1984)).

"[T]he Restatement calls for application of 'the local law of the state where the injury occurred,' 'unless, with respect to the particular issue, some other state has a more significant relationship.'" *Badgett*, 2016 WL 4196680, at *2 (quoting Restatement (Second) of Conflict of Laws § 146 (1971)). The Restatement provides the following five factors to determine the state with the most significant relationship to the lawsuit:

> (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6 which the court may deem relevant to the litigation.

*Id.* (quoting Restatement (Second) Conflict of Laws § 145).

These factors support the application of Ohio law. Park National's allegations show that the place of injury was Ohio. Park National alleged economic injury in the form of the lost opportunity to successfully litigate or settle their claims against BP. [ECF No. 1, ¶¶ 99–100.] Park National also alleged that "all losses are incurred on [Park National's] books" [*id.* at ¶ 49], and that "it and its subsidiaries' losses were incurred in Newark, Ohio." [*id.* at ¶ 42.] As the place of injury, Ohio law applies. *See Badgett*, 2016 WL 4196680, at *2–3 (describing the injury in legal malpractice as the consequences that resulted from the alleged malpractice); *see also Luv N' Care, Ltd v. Goldberg Cohen, LLP*, 703 F. App'x 26, 28 (2d Cir. 2017) (recognizing that when legal malpractice injuries are purely economic, the place of injury is "where the plaintiff resides and sustains the economic impact of the loss"); *Movie Gallery US, LLC v. Greenshields*, 648 F. Supp. 2d 1252, 1262 (M.D. Ala. 2009) (recognizing that "the place of injury for tort claims involving financial injury is the state in which the plaintiff suffered the economic impact" (quotation omitted)).

The remaining factors do not show that another state has a more significant relationship with this action. The place of conduct giving rise to the injury was legal representation in court proceedings in the MDL Court in Louisiana. *See Badgett*, 2016 WL 4196680, at *3 (determining conduct giving rise to injury of alleged malpractice was court where legal representation occurred). Park National and its subsidiaries are incorporated and have their principal place of business in Ohio, whereas Defendants are incorporated and domiciled in Florida. The place of the parties' relationship is Ohio and Florida. Accordingly, Ohio substantive law applies to Park National's claim.

#### iv. Ohio's statute of limitations applies.

To determine the applicable statute of limitations under choice-of-law principles, Ohio has adopted the Restatement of Conflict of Laws. Under the Restatement, Ohio's statute of limitations applies.

Ohio has consistently applied the 1971 version of the Restatement rather than the 1988 version. *See Mukamal*, 2024 WL 149218, at *4 ("A review of state court decisions reveals that Ohio courts have consistently applied the 1971 version of § 142."). The 1971 version of the Restatement allows the forum state's statute of limitations to control: "[a]n action will be maintained if it is not barred by the statute of limitations *of the forum*, even though it would be barred by the statute of limitations of another state." *Frisch*, 2012 WL 5595207, at *10 (quoting Restatement (Second) Conflict of Laws § 142 (1971)). The 1988 version differs in the analysis when the forum's statute of limitations would *permit* the claim, but it similarly provides that the forum's statute of limitations applies if it would *bar* the claim.

As discussed above, here, Ohio's statute of limitations bars Park National's claim against the Individual Defendants. Thus, while the choice-of-law analysis regarding statute of limitations differs slightly under the 1988 version, "[t]his Court need not resolve the question of whether the 1971 or 1988 version of Restatement Section 142 embodies Ohio law, as it is inconsequential to the outcome here." *Id.*

Accordingly, "[n]o matter which state's substantive law governs Plaintiffs' [malpractice] claim, Ohio law dictates that Ohio's statute of limitations apply to the claims alleged here." *Id.* at *11.

**D. Even under Louisiana or Florida law, Park National's claim against the Individual Defendants would be time-barred.**

Even if Louisiana or Florida law applied to Park National's malpractice claim, its claim against the Individual Defendants must still be dismissed as time-barred.

First, neither state would enforce the Tolling Agreements against the Individual Defendants. *See Hanson v. Nat'l Legal Staffing Support, LLC*, 383 So. 3d 812, 815 (Fla. Dist. Ct. App. 2024) (concluding client's settlement agreement did not bind non-party attorney); *Murray v. Ward*, 280 So. 3d 625, 629–30 (La. Ct. App. 2019) (recognizing the malpractice periods of limitations are "peremptive periods" that "cannot be renounced, interrupted or suspended"); *Regions Bank v. Eymard*, 342 So. 3d 908, 920 (La. Ct. App. 2022) (stating "peremptive period may not be altered by contract or agreement of the parties").

That leaves each state's limitations period. Under Louisiana law, a legal malpractice claim must be brought within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. La. R.S. § 9:5605. Even as to actions filed within one year of discovery, all actions must be filed at the latest within three years from the date of the alleged act, omission, or neglect. *Id*. Under Florida law, a claim for legal malpractice must be brought within two years of when the cause of action was or should have been discovered, and generally when the underlying legal proceeding has completed appellate review. *See* Fla. Stat. § 95.11(5)(b); *Hurley v. Lifsey*, 310 So.3d 1030 (Fla. Dist. Ct. App. 2020) (discussing discovery rule for legal malpractice claim); *Mikhaylov v. Bilzin Sumberg Baena Price & Axelrod LLP*, 346 So.3d 224 (Fla. Dist. Ct. App. 2022) (discussing appellate finality rule for legal malpractice claim).

Thus, under either state's accrual rules, Park National had to bring its claim no later than February 2023. Its claim filed over three years later would be time-barred in both states.[2]

### E. Park National fails to state a claim of malpractice because its underlying OPA claim did not allege recoverable damages.

Park National's malpractice claim independently fails because the Complaint does not plausibly allege that Park National could have obtained a recovery in the underlying litigation but for Defendants' alleged negligence.

As a threshold matter, Park National's only claimed injury is that the dismissal prevented it from recovering those losses presented to BP under OPA Section 2702(b)(2). [ECF 1 ¶¶ 83–102]. Park National does not allege that any of its underlying Florida state law or maritime law claims against BP form the basis of its malpractice claim. Even then, the MDL Court has concluded that state statutory and common law "is preempted by maritime law, notwithstanding OPA's savings provisions," and that general maritime law claims cannot be sustained unless they allege physical damage to a proprietary interest, which Park National fails to do. *In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on Apr. 20, 2010*, 808 F. Supp. 2d 943, 968 (E.D. La. 2011), *aff'd sub nom. In re Deepwater Horizon*, 745 F.3d 157 (5th Cir. 2014).

Under Ohio law, when a malpractice plaintiff claims that an attorney's conduct caused the loss of an underlying lawsuit, the plaintiff must establish the "case within the case"—that is, that the plaintiff would have obtained a more favorable result but for the attorney's misconduct. *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 893 N.E.2d 173, 176–78 (Ohio 2008); *see also Bressi v. Irwin*, 175 N.E.3d 979, 986 (Ohio Ct. App. 2021) (recognizing that *Environmental Network* clarified when the case-within-a-case causation standard applies and

[2] Further, under Louisiana law, the Tolling Agreement also could not be enforced against Levin Papantonio because peremptive periods cannot be changed by agreement of the parties. *Regions Bank*, 342 So. 3d at 920.

applying it to malpractice claim based on failure to timely file an appeal); *McCarty v. Pedraza*, 17 N.E.3d 71, 78 (Ohio Ct. App. 2014) (recognizing Ohio courts have "declined to limit" *Environmental Network* to settlement cases and "have applied the case's rationale when a plaintiff claimed a different more favorable outcome"). All issues that would have been litigated in the underlying action must be resolved in the malpractice action, with the plaintiff bearing the burdens it would have borne in the original litigation. *Environmental Network*, 893 N.E.2d at 177.

These principles control here. Park National therefore must plausibly allege that its underlying OPA claim was legally viable and probably would have produced a recovery. *Id.* at 176–78. But Park National cannot satisfy that requirement, because the losses claimed in the Complaint are too derivative and attenuated to be recoverable OPA damages.

**i. Courts have concluded that recovery under OPA requires a substantial or close link between the injury to property or natural resources and the claimant's economic loss.**

OPA does not authorize recovery for every economic consequence that follows an oil spill. Section 2702(b)(2)(E) permits recovery of "[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources." 33 U.S.C. § 2702(b)(2)(E). At the time Park National brought its underlying OPA claims, the standard for recovery under OPA was less developed than it is today (and many plaintiffs' firms, including Levin Papantonio, were more optimistic about bank claims than after the law developed). But after Park National filed suit, courts—including the MDL Court and the Fifth Circuit—made plain that there must be a meaningful causal connection between an identified injury to property or natural resources and the claimant's alleged lost profits or impaired earning capacity. Those decisions show that Park National cannot sustain its claim.

In *In re Taira Lynn Marine Ltd. No. 5, LLC*, the Fifth Circuit rejected claims for economic losses under OPA Section 2702(b)(2) where the claimants did not connect those losses to

qualifying property injury resulting from the discharge. 444 F.3d 371, 383 (5th Cir. 2006) (relying on the same interpretation in *Gatlin Oil Co. v. United States*, 169 F.3d 207 (4th Cir.1999)). These claimants included a convenience store business, a fabrication and dock facility, and wholesale fishing operations. The existence of an economic loss and a discharge-producing incident was insufficient; the claimed loss had to result from the property injury contemplated by OPA. *Id.*

The MDL Court cited *Taira Lynn* while denying certain economic loss claims several years into the MDL, in the so-called "Moratorium Ruling." *In re "Deepwater Horizon"*, 168 F. Supp. 3d 908 (E.D. La. 2016). Soon after the spill in 2010, the federal government imposed a moratorium on further oil development in the Gulf. *Id*. at 910. The plaintiffs in these cases were "drilling rig workers, rig support personnel, transport personnel," and others who could no longer work on other oil projects because of the moratorium. *Id*. at 911. They argued that BP was responsible for their economic losses under Section 2702(b)(2)(E) (the same section asserted by Park National). *Id*. at 911–14. While there was "no doubt" that the moratorium would not have been imposed absent BP's spill, the moratorium was actually "motivated by perceived weaknesses of industry-wide safety measures." *Id.* at 916.

Thus, even though the moratorium would not have occurred but for BP's spill, and the moratorium allegedly caused plaintiffs' losses, the MDL Court denied all of the plaintiffs' claims because their "losses did not result from the discharge or substantial threat of discharge of oil from" BP's well. *Id.* The court's decision shows that under OPA, it is insufficient to recover damages by merely showing an event that allegedly caused harm would not have occurred but for the spill—the claimant must also show the event allegedly causing harm was actually motivated by oil or the threat of oil from BP's spill.

The MDL Court explained this outcome was consistent with *Taira Lynn* and also noted that "Plaintiffs cite no cases in which a private party has been held liable (under OPA or other law) for losses caused by a moratorium." *Id.* at 917.

The MDL Court later rejected an ordinary but-for causation as the standard for recovery under OPA Section 2702(b)(2)(E). *In re "Deepwater Horizon"*, 558 F. Supp. 3d 331, 338–39 (E.D. La. 2021) ("*Classy Cycles*"). The plaintiff, Classy Cycles, rented "golf carts, mopeds, and motorcycles, and its business allegedly was '100% based on tourism.'" *Id*. at 333. It argued that a steep decline in Florida tourism caused a decline in income. *Id*. at 336–37.

Considering both *Classy Cycles*'s and BP's positions on the meaning of Section 2702, the MDL Court concluded that there could not be a but-for causation standard, because that could "lead to a perpetual domino effect of 'infinite liability.'" *Id.* at 339. The court instead required a "a significant causal link between the injury, destruction, or loss of property or natural resources and the plaintiff's lost profits or impaired of earning capacity." *Id.*

The Fifth Circuit decided an appeal in a different oil spill case, *In re Deepwater Horizon*, 48 F.4th 378 (5th Cir. 2022) ("*Loggerhead*"). The *Loggerhead* plaintiff was a scuba diving and cruise services that was in financial trouble before the spill, and it struggled to attract and retain customers due to clean-up efforts, water closures, and oil in the water. *Id*. at 380–81, 385. The Fifth Circuit declined to adopt every aspect of the *Classy Cycles* causation formulation, but agreed that OPA requires a "substantial-nexus" analysis. *Id*. at 383–86. Its inquiry examined the connection between the relevant property or natural-resource injury and the particular economic loss claimed—not simply whether the spill appears somewhere in the alleged sequence of events. *Id.*

*Venoco, Inc. v. Plains Pipeline, L.P.* is also instructive. No. 16-2988 PSG (JEMx), 2016 WL 10646303, at *4–6 (C.D. Cal. Sept. 26, 2016). The court granted a motion to dismiss claimant's action to recover alleged economic loss from an oil spill. *Id.* Although the claimant operated an oil-production platform *physically connected* to the pipeline system affected by the spill, the court dismissed its OPA economic-loss claim because "[a]lthough lost profits and earnings are recoverable under section 2702(b)(2)(E), they must be closely linked to the oil spill and traceable to clean-up efforts" to satisfy the standard for recovery under OPA. *Id.* at *6 (citing *Taira Lynn*, 444 F.3d at 381).

The court recognized that instances where a plaintiff had recovered under OPA included when a plaintiff alleged it could not access its facilities because of oil pooling around the entrance, or having to stop operations to clean up pooled oil. *Id.* The court explained that such claims "were directly linked to the physical manifestations of the spill." *Id.* In contrast, the claimant in *Venoco* alleged an "injury [that] is one-step removed from the pipeline spill," such that if the "pipeline [had] been shut in for repairs, or maintenance, or inspection, no oil would have been discharged, yet [claimant] would be in the identical position regarding" impact on its production ability. *Id.*

These authorities establish that a claimant cannot recover merely because an oil spill set in motion a sequence of economic events that eventually affected the claimant's finances. Something more than a derivative claim is required.

**ii. Park National alleges a chain of derivative financial consequences at least one-step removed from the spill, not the substantial connection courts have required under OPA.**

Applying these principles, Park National cannot show that its underlying claims would have succeeded, because those claims did not meet the causation and damages requirements courts have concluded apply to OPA.

Park National's theory depends upon several distinct causal steps removed from the oil spill. According to the Complaint, the spill injured natural resources and adversely affected economic activity in portions of the Gulf Coast. [ECF 1, ¶¶ 19–31.] Certain borrowers allegedly suffered reduced revenues, diminished property values, or other economic difficulties. Those borrowers then allegedly failed to repay loans held by Park National's banking subsidiary. Park National thereafter allegedly experienced charge-offs, collateral deficiencies, OREO write-downs and expenses, lost interest, and related corporate losses. [ECF 1, ¶¶ 42–79.]

That sequence does not, and cannot, plausibly establish that Park National's losses were "due to" injury, destruction, or loss of property or natural resources from the oil spill within the meaning of § 2702(b)(2)(E). *See Venoco*, 2016 WL 10646303, at *4–6 (dismissing claim for damages under OPA when "injury is one-step removed from the pipeline spill"). The alleged immediate causes of Park National's asserted losses were borrower defaults, insufficient collateral, foreclosure-related expenses, and accounting decisions—not the spill's physical effects on Park National's own operations. *See Taira Lynn*, 444 F.3d at 383 ("Claimants have not raised an issue of fact as to whether their economic losses are due to damage to property resulting from the discharge of the gas. Therefore, Claimants cannot recover under OPA . . . ."). Thus, on their face, Park National's alleged losses are too derivative to be recoverable under OPA. Further, Park National does not allege that its borrowers' losses were a result of property damage caused by the discharge, and so it is not even clear that Park National's *borrowers* would have viable claims for damages under OPA.

And Park National is differently situated than the plaintiffs in *Classy Cycles* and *Loggerhead*. While in both cases it was a question of fact whether the plaintiffs could show a sufficient causal connection to recover under OPA, those plaintiffs were both tourism-related

businesses operating on the beach or even *in* oiled waters. Their property and operations were directly or immediately connected to the oil spill. By contrast, Park National—incurring its loan-related losses in Newark, Ohio—is derivative and numerous steps removed from *all* similar claims. Indeed, in attempting to recover loan-related losses, Park National is at all times at least "one-step removed" from the reach of OPA. *Venoco*, 2016 WL 10646303, at *6. If the plaintiff in *Venoco* operating an oil production platform directly connected to an oil-discharging pipeline is too remote from OPA's scope, Park National is as well.

Further, Park National fails to identify, on a loan-by-loan basis, any information that cases like *Classy Cycles* and *Loggerhead* have indicated could even create a fact issue about causation: (1) the particular property or natural resource allegedly injured by oil; (2) the nature and extent of that injury; (3) the borrower whose business or property was affected by the identified injury; (4) how that injury reduced the particular borrower's profits or earning capacity; (5) why that reduction, rather than preexisting financial conditions or another cause, produced the borrower's default; (6) how the default produced the particular amount charged off; (7) what amounts were recovered from collateral, guaranties, insurance, bankruptcy proceedings, or other sources; or (8) what portion of Park National's claimed loss constituted lost profits or impaired earning capacity recoverable under § 2702(b)(2)(E).

Instead, the Complaint just groups loans into broad geographic classifications and includes various loans charged off or partially charged off within those areas. [ECF 1, ¶ 44.] But geographic proximity to an affected region does not itself establish that injury to property or natural resources caused a borrower's default, much less that the same injury caused the lender's loss. *Taira Lynn*, 444 F.3d at 383.

Even accepting Park National's allegations that the spill broadly affected the Gulf Coast economy, OPA requires more than an allegation that the claimant occupied some position in the affected regional economy. *See id.*; *Venoco*, 2016 WL 10646303, at *4–6. Otherwise, every creditor, supplier, investor, insurer, landlord, and contracting party of an affected business could claim that its resulting losses were "due to" the spill. That is the limitless chain of economic consequences that courts have said OPA does not tolerate.

**iii. Park National's damage categories do not themselves constitute lost profits or impaired earning capacity.**

Park National's alleged losses of loan charge-offs, OREO write-downs, OREO expenses, and lost interest are not, merely by labeling them economic losses, recoverable under § 2702(b)(2)(E).

Section 2702(b)(2)(E) authorizes limited recovery of "loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources." A loan charge-off occurs when a borrower fails to service a private debt obligation. Thus, a loan charge-off loss runs through a contract with the borrower, not through any injury to property or resources the lender uses itself. Further, if the loan is later repaid or the collateral is sold at a higher price than its recorded book value, the charge-off would be reversed. An OREO write-down reflects a reduction in the recorded value of acquired collateral; it is not an injury or destruction of property caused by oil. Expenses associated with foreclosure, ownership, maintenance, or disposition likewise do not become OPA lost-profit damages merely because the underlying borrower operated in an affected region.

Lost interest income might, in appropriate circumstances, implicate profits or earning capacity. But Park National would still have to connect the particular lost interest to an identified

injury to property or natural resources with the substantial nexus that OPA requires. The Complaint offers only the same aggregate and multistep theory for that category.

Section 2702(b)(2)(B), which separately addresses injury to or economic losses resulting from destruction of real or personal property, does not cure the defect. Recovery under that provision belongs to a claimant who owns or leases the injured or destroyed property. 33 U.S.C. § 2702(b)(2)(B). Park National cannot recover property damages belonging to its borrowers. And the Complaint does not allege that oil physically injured or destroyed particular property owned or leased by Park National.

**iv. The incorporated materials confirm the defect is incurable.**

In deciding a Rule 12(b)(6) motion, the Court may consider the Complaint, exhibits attached to it, documents incorporated by reference, and materials integral to the claim. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). When conclusory allegations conflict with the specific contents of an attached or incorporated document, the document controls. *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012).

Park National attached or incorporated the materials on which their underlying BP claim rested. Those are the materials it alleges are extensive, detailed, and show how it would have recovered in the underlying litigation. [ECF 1 ¶¶ 84, 85, 101.] But those materials describe aggregate banking losses, geographic classifications, loan charge-offs, OREO adjustments, expenses, and lost interest. They do not supply the missing substantial nexus between a particular injury to property or natural resources and each claimed loss.

Defendants' motion to dismiss is not a request that the Court resolve competing evidence concerning OPA causation. Park National's deficiency is foundational and fatal: it does not allege facts that place its underlying loss categories within the damages OPA permits, nor has it alleged facts showing damages with a substantial nexus to the discharge.

Because its underlying OPA claim would not have survived the governing causation and damages requirements on the facts alleged—or on any facts it could reasonably provide—Park National cannot establish that Defendants' conduct caused any loss. The Complaint should be dismissed for this additional and independent reason.

## V. CONCLUSION.

Whether by acquiescence or choice-of-law analysis, Park National's claim is governed by Ohio's substantive law and statute of limitations. Under Ohio law, the Individual Defendants are not bound by the Tolling Agreement because they are not parties to it. Park National's claim against them accrued in 2020 at the latest, and it is now time barred by Ohio's one-year statute of limitations. Without any individual attorneys as defendants, Park National cannot maintain a malpractice claim against just Levin Papantonio. Moreover, Park National does not and cannot satisfy the but-for causation requirement because the Complaint allegations, taken as true, demonstrate that it lacked cognizable OPA damages.

These fatal deficiencies are apparent on the face of the Complaint, and they cannot be fixed. Accordingly, the Court should dismiss the Complaint in its entirety with prejudice.

Dated: October 16, 2026

Respectfully submitted,

*/s/ David J. Butler*

David J. Butler (0068455) (Trial Attorney)
David C. Roper (0099782)
TAFT STETTINIUS & HOLLISTER LLP
41 South High Street, Suite 1800
Columbus, Ohio 43215-6106
Telephone: (614) 221-2838
dbutler@taftlaw.com
droper@taftlaw.com

John M. Degnan (*pro hac vice forthcoming*)
Jason R. Asmus (*pro hac vice forthcoming*)
Hannah S. Fereshtehkhou (*pro hac vice forthcoming*)
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2210
Telephone: (612) 977-8400
jdegnan@taftlaw.com
jasmus@taftlaw.com
hfereshtehkhou@taftlaw.com

William F. Cash III (0084482)
LEVIN PAPANTONIO PROCTOR BUCHANAN O'BRIEN BARR MOUGEY, P.A.
316 S. Baylen Street #600
Pensacola, Florida 32502
Telephone: (850) 435-7059
bcash@levinlaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ David J. Butler*