IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PARK NATIONAL CORPORATION, VISION-PARK PROPERTIES, LLC, and SE PROPERTY HOLDINGS, LLC,

*Plaintiffs,*

*v.*

LEVIN PAPANTONIO PROCTOR BUCHANAN O'BRIEN BARR MOUGEY, P.A.; BRIAN H. BARR; BRANDON BOGLE; and WESLEY BOWDEN,

*Defendants.*

Civil Action No: 2:26-cv-00965-SDM-KAJ

Chief Judge Sarah D. Morrison

Magistrate Judge Kimberly A. Jolson

**DEFENDANTS LEVIN, PAPANTONIO, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A.; BRIAN H. BARR; BRANDON BOGLE; AND WESLEY BOWDEN'S MOTION TO STAY DISCOVERY**

Pursuant to Federal Rule of Civil Procedure 26(c), the Court's inherent authority to manage its docket, and the Court's October 26, 2026 Notation Order, Defendants Levin, Papantonio, Proctor, Buchanan, O'Brien, Barr, Mougey, P.A. ("Levin Papantonio"); Brian H. Barr; Brandon Bogle; and Wesley Bowden (the "Individual Defendants") respectfully move to stay discovery and related deadlines until the Court resolves Defendants' pending Motion to Dismiss. ECF No. 25.

The Motion to Dismiss presents threshold legal issues that would, if granted, dispose of this action in its entirety. Park National's claims against the Individual Defendants are time-barred because they were not parties to Park National's tolling agreement with Levin Papantonio. And without a viable malpractice claim against an individual attorney, Park National cannot maintain a derivative malpractice claim against Levin Papantonio either. Those issues can be decided from the Complaint, its exhibits, and applicable law. Discovery is unnecessary.

Similarly, the Motion to Dismiss points out that the Oil Pollution Act does not provide a financial institution like Park National with a remedy for unpaid loan damages. If the Court accepts this argument—even in part—then Park National's claim for damages would be gutted.

Proceeding with discovery before the Court rules on these matters would impose substantial and unnecessary expense on all parties. Park National seeks at least $134 million. The amount in controversy, as well as the composite nature of that amount, will force all parties to expend significant time and resources discovering its basis. That discovery will be extensive, and as set forth in Defendants' memorandum, will require discovery into many hundreds of decades-old loan files and against many hundreds of non-parties. All while the Motion to Dismiss is pending that, if granted, would dispose of the entire case. Park National will not be prejudiced by a stay of discovery and discovery would not change the outcome of the Motion to Dismiss.

Defendants recognize the general rule in this district that a pending motion to dismiss on its own is not enough to stay discovery. But the circumstances presented here fit the recognized exception to the rule. Defendants' memorandum in support provides greater detail.

Dated: November 9, 2026

Respectfully submitted,

TAFT STETTINIUS & HOLLISTER LLP

*<u>/s/ David J. Butler</u>*
David J. Butler (0068455) (Trial Attorney)
David C. Roper (0099782)
41 South High Street, Suite 1800
Columbus, Ohio 43215-6106
Telephone: (614) 221-2838
dbutler@taftlaw.com
droper@taftlaw.com

John M. Degnan (*pro hac vice*)
Jason R. Asmus (*pro hac vice*)
Hannah S. Fereshtehkhou (*pro hac vice*)
2200 IDS Center

80 South Eighth Street
Minneapolis, MN 55402-2210
Telephone: (612) 977-8400
jdegnan@taftlaw.com
jasmus@taftlaw.com
hfereshtehkhou@taftlaw.com

LEVIN, PAPANTONIO, PROCTOR,
BUCHANAN, O'BRIEN, BARR &
MOUGEY, P.A.

William F. Cash III (0084482)
316 S. Baylen Street #600
Pensacola, Florida 32502
Telephone: (850)435-7059
bcash@levinlaw.com

*Attorneys for Defendants*

# **MEMORANDUM IN SUPPORT**

## I. INTRODUCTION.

Park National asserts one legal-malpractice claim arising from Levin Papantonio's representation of Park National in litigation concerning the Deepwater Horizon oil spill. *See generally* ECF No. 1. Park National alleges that Levin Papantonio did not respond to a show-cause order, resulting in dismissal of the underlying action in July 2018. *Id.* The Fifth Circuit affirmed that dismissal in February 2020. *Id.* Park National seeks at least $134 million in damages, including a long list of loan charge-offs, OREO[1] write-downs and expenses, and lost interest. *Id.*

All Defendants moved to dismiss the Complaint in its entirety. ECF No. 25. There are at least two grounds for dismissal.

First, the claims against the Individual Defendants are untimely because they are not parties to the tolling agreement between Park National and Levin Papantonio. And under Ohio law, the absence of a viable malpractice claim against an individual attorney forecloses any claim against Levin Papantonio.

Second, Park National cannot establish case-within-a-case causation as a matter of law because its underlying banking losses were too derivative from an injury to property or natural resources to be recoverable under the Oil Pollution Act. Either ground is sufficient to end this entire action and there would be no need for discovery.

Additionally, in their joint report, the parties did propose an alternate plan for discovery, that would provide for a two-phased approach: Phase 1 being first-party discovery between Park National and any Defendants; Phase 2 including third-party discovery against others. This motion

---

[1] Other Real Estate Owned (OREO) write-downs are accounting adjustments made when the fair market value of foreclosed real estate drops below the value at which the bank or financial institution currently carries it on its balance sheet.

focuses on Phase 1 first party discovery that would be required under this proposal and why a complete stay of discovery is appropriate in this case. The two-phased approach will still result in wasted resources if the Motion to Dismiss is ultimately granted, and even if only partially granted, there would still likely be a waste of resources.

Therefore, the Court should stay all discovery until the Motion to Dismiss is decided.

## II. LEGAL STANDARD.

"Trial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003). "In assessing a motion to stay discovery, the Court must weigh 'the burden of proceeding with discovery upon the party from whom discovery is sought against the hardship which would be worked by a denial of the discovery.'" *Brown v. Danson Inc.*, No. 1:11–cv–820, 2012 WL 3600100, at *2 (S.D. Ohio Aug. 21, 2012) (quoting *Bowens v. Columbus Metro. Library Bd. of Trs.*, No. 2:10–cv–219, 2010 WL 3719245, at *1 (S.D. Ohio Sept. 16, 2010)). The proponent of the motion "bears the burden of showing the need for the stay and that 'neither the other party nor the public will suffer harm from entry of the order.'" *Pres. Partners, Inc. v. Sawmill Park Props., LLC*, No. 2:22-CV-477, 2023 WL 2943820, at *1 (S.D. Ohio Apr. 14, 2023) (citation omitted).

While "a case-dispositive motion is usually deemed insufficient to support a stay of discovery," *Bowens*, 2010 WL 3719245, at *3, "[l]imitations on pretrial discovery are appropriate where claims may be dismissed based on legal determinations that could not have been altered by any further discovery," *Gettings*, 349 F.3d at 304 (quotations omitted).

## III. ARGUMENT.

A stay of discovery is appropriate in this case. Defendants' statute of limitations defense is case-dispositive, and no discovery will change that. Further, the balance of the hardships and the interests of efficiency and judicial economy weigh in favor of a stay. Park National will not be prejudiced by a stay.

### A. Park National's claim can be dismissed on the statute of limitations, and no discovery is needed.

A stay may be appropriate in "special circumstances" including "if it appears that the complaint will almost certainly be dismissed." *Shanks v. Honda of Am. Mfg.*, No. 2:08-CV-1059, 2009 WL 2132621, at *1 (S.D. Ohio July 10, 2009). Thus, when the posture of a motion to dismiss would confirm a case lacks merit and would be case-dispositive, this may constitute "'special circumstances' justifying a discovery stay." *CentralSquare Techs., LLC v. Nat'l Bd. of Boiler & Pressure Vessel Inspectors*, No. 2:25-CV-774, 2026 WL 1361508, at *2 (S.D. Ohio May 15, 2026) (granting stay of discovery).

A motion to dismiss may also show that a complaint will almost certainly be dismissed when the motion "present[s] a 'narrow legal issue (such as the running of the statute of limitations) which is easily evaluated in order to determine whether the motion to dismiss has merit.'" *Wilson v. ThyssenKrupp Elevator Corp.*, No. 2:20-CV-2138, 2022 WL 167523, at *2 (S.D. Ohio Jan. 19, 2022) (quoting *Blevins v. Premium Merch. Funding One, LLC*, No. 2:18-CV-00377, 2018 WL 4501068, at *1 (S.D. Ohio Sept. 20, 2018)), objections overruled, No. 2:20-CV-2138, 2022 WL 1618447 (S.D. Ohio Feb. 8, 2022).

Such an issue may warrant a stay unless that issue is "fairly debatable." *See Ohio Bell Tel. Co. v. Glob. NAPs Ohio, Inc.*, No. 2:06-CV-0549, 2008 WL 641252, at *2 (S.D. Ohio Mar. 4, 2008) (declining to stay discovery where jurisdictional issue was "fairly debatable"); *see also*

*Wendy's Netherlands B.V. v. Levy*, No. 2:24-CV-3077, 2026 WL 35205, at *3 (S.D. Ohio Jan. 6, 2026) ("[A] timeliness argument generally is insufficient to justify a discovery stay unless the analysis is straightforward."). Even then, a stay may be appropriate when the complaint may be dismissed based on a "legal determination[] that could not have been altered by any further discovery." *Blevins*, 2018 WL 4501068, at *1 (quoting *Gettings*, 349 F.3d at 304).

Applying this framework, this case has the requisite special circumstances that warrant a stay. Defendants' Motion to Dismiss presents a narrow, straightforward legal issue of the running of the statute of limitations. *See* ECF No. 25, PageID.336–44. The face of the Complaint shows that this case will almost certainly be dismissed on that basis.

Specifically, as the Motion to Dismiss explains, Park National's claim against the Individual Defendants is time-barred, and also as a result it cannot sustain a claim against Levin Papantonio. *See* ECF No. 25, PageID.336–44. There is no debate here that Ohio law applies: in the Complaint Park National has unequivocally asserted its legal malpractice claim under Ohio law. ECF No. 1 at PageID.25, ¶ 102 (asserting claim "[u]nder Ohio law"). Park National also invoked and attached the tolling agreement to its Complaint, and the Court can readily determine from the four corners that the Individual Defendants are not parties to the tolling agreement. *See* ECF No. 1-11. Park National does not even allege that they are. Thus, as a matter of law Park National has no enforceable tolling agreement with the Individual Defendants. *See* ECF No. 25, PageID.336–38. Accordingly, the claims against the Individual Defendants are time-barred. *Id.* at PageID.336–39. Further, under Ohio law, dismissal of Levin Papantonio follows directly after dismissal of the Individual Defendants. *Id.*

This outcome is not "fairly debatable." There is no dispute that even by the latest date Park National's claim could have accrued, its claim is time-barred. *See* ECF No. 25, PageID.336–44.

And whether the statute of limitations has run can be evaluated from the face of the Complaint, and the determination would not be altered by further discovery.

Thus, the Motion to Dismiss presents a narrow legal issue showing it is almost certain that the sole claim in the Complaint should be dismissed. There are no other claims and no other parties that would survive the granting of the Motion to Dismiss. In that circumstance, all discovery would be futile and all time and resources spent on discovery would be unnecessary. In the circumstances presented here, a stay of discovery is warranted.

**B. Staying discovery until a ruling on the Oil Pollution Act argument will guide the contours of discovery, if any.**

Park National's core claim—that it is a financial institution permitted under the Oil Pollution Act to recover damages that actually belong to its own borrowers—is a novel one. The MDL Court hearing the *Deepwater Horizon* litigation never went that far, and the caselaw shows that there must be a clear link between injury to specific property and economic damages for the plaintiff to prevail. ECF No. 25, PageID.344–52. Defendants are unaware of a single decision in the 36-year history of this law that permits a bank to proceed on this theory. OPA claims belong to those parties injured by oil pollution, and Park National is not one.

Park National is asking the Court for a nine-figure award on a theory that has scant, if any, support in the law. Defendants argued that the award is totally unsupportable—and that these are plain questions of law, not questions of fact. *Id*. Before opening discovery into damages, the Court should rule on the Motion to Dismiss. If the Defendants are right, OPA damages are zero and that is the end of the action. But even if the Defendants are only partly right about the law, the Court's ruling on the Motion to Dismiss would still provide guidance to the parties about the available scope of damages. Such a ruling could lead to settlement, or it could winnow the scope of discovery considerably. Given the size of the award here, the necessary discovery to be done, and the fact

that these matters have been frozen under a private tolling agreement for years already, it would benefit the parties and the Court to get the Oil Pollution Act law right before opening discovery.

### C. The balance of hardships weigh in favor of a stay.

A stay is also warranted because the balance of hardships demands it. Even just in Phase I of the parties' alternative discovery plan—which allows just first-party merits discovery—discovery will be extraordinarily complex and expansive, and this further weighs in favor of staying discovery pending a decision on the motion to dismiss. *Neal v. First Liberty Ins. Corp.*, No. 1:15-cv-00134, 2017 WL 6940732, at *6 (W.D. Ky. Apr. 3, 2017) (granting a motion to stay discovery where discovery "appear[ed] to be an extensive and expensive proposition for both parties").

The merits of Park National's legal malpractice claim against Levin Papantonio turns on the merits of Park National's claim against each of the defendants in the underlying Deepwater Horizon oil spill matter. An example demonstrates this point. As recognized in the parties' Rule 26(f) Report, Park National's claimed damages "rely on damages allegedly sustained by [Park National's] customers," which would include hundreds or thousands of such customers. ECF No. 32 at PageID.373. In assembling its damages, Park National asserted that it had charge-offs connected to hundreds of discrete loan files.[2] Then it added those numbers together to get an aggregated charge-off amount—$112,797,666. ECF No. 1, PageID.12, ¶ 44(A).

A reasonable estimate for the number of loans (based on information not in the Complaint or its exhibits, but also not likely in dispute), is 800 total loans. Each of these loan files has its own unique story to tell from a discovery standpoint to substantiate how Park National determined how much it would have to charge off and the individualized cause of each charge off.

[2] This specific number may vary but for purposes of this example, Levin Papantonio will use 800 loans.

Whenever discovery does open, Levin Papantonio intends to discover the circumstances of each of the 800 loans. That will require:

- The production of loan files on loans that, by definition, are at least 16 years old (that were open during the 2010 oil spill). Most will be even older (every loan that was originated before 2010). There will be substantial paper and ESI burdens to go along with each file.
- Testimony from Park National employees—many of whom are probably gone from the bank by now—regarding the meaning and interpretation of those files.
- Discovery into the bank's relationship with each of the borrowers of the loans. And given the complex nature of commercial banking, there will be more than different borrowers on those loans.
- And even before getting into third-party discovery, Levin Papantonio will have to discover just what evidence Park National has to connect its charge-offs to the oil spill, versus any other business reason: the 2008 recession, mismanagement of the loan by the bank, mismanagement by borrowers' businesses, competition, fraud, catastrophe, etc.

Levin Papantonio will also be entitled to discover what happened to each of the properties the bank took over. The $134 million total number is based on events and values as they stood in the January 2013 presentment to BP. ECF No. 1, PageID.11, ¶¶ 42, 43, 99; ECF No. 1-5. But those damages weren't chiseled in stone in 2013. The properties' values went up and down, particularly after Florida's economy rebounded from the 2008 real estate crash. What happened to all those properties in the last thirteen years? Did Park National recoup any losses by way of subsequent market increases? Discovery against Park National on this and many other issues will be required.

After first-party discovery comes third-party discovery, where the topics multiply again. The Court can expect that Park National and Levin Papantonio will seek, at least:

- Sixteen-year-old business records of the borrowers for the 800 loans. Let us assume that is approximately 1,000 separate individuals and entities. If this case goes to trial, Park National will need those records to show the jury that each loan failure was actually caused by the oil spill. This is an element of Park National's damages, and that will be Park National's burden, not Levin Papantonio's. If Park National does not undertake the discovery, then Levin Papantonio may do so to dispel Park National's claims.

- Depositions of the 1,000 individuals and entities will follow. Again, it will be Park National's burden to carry, to show that its borrowers failed to repay their loans in 2010 and subsequent years *because of the oil spill*—and not some other reason. Similarly, at those depositions, Levin Papantonio will ask each borrower whether their loan defaults were actually caused by some other reason (and what Park National did or didn't do to deal to accommodate their business circumstances).

- Voluminous accounting and economic expert testimony based on all these facts.

- Confidential information from BP, the other *Deepwater Horizon* defendants, and other banks who chose to settle their claims. This information, which will require careful handling, will show how the oil spill defendants and nearly all other American banks correctly recognized that OPA does not support claims by banks. Many banks dismissed their claims outright or assigned them minimal value.

This is just some of the discovery Park National's claim will require. **Exhibit A** provides a table summarizing the damage-related allegations in the Complaint, together with the corresponding Phase I first-party discovery that is implicated by those assertions. As **Exhibit A** demonstrates, the scope of Phase 1 first-party discovery that both parties would be required to take absent a stay is daunting and would involve significant expenditures of time and resources. Moreover, **Exhibit A** is only a summary of the discovery required with respect to the allegations in the Complaint and does not include discovery implicated by the exhibits to the Complaint and the inevitable follow-up discovery that would occur in a case of this magnitude as the facts unfold.

Further, **Exhibit A** does not include the required first-party, Phase 1 discovery that would be required related to the merits of Park National's underlying lawsuit against BP. Park National claims it "lost the opportunity to successfully litigate or settle [its] claims," and "would have recovered on [its] claims against the Oil Spill Defendants." ECF No. 1, PageID.25, ¶¶ 100, 101. Park National alleged that because it has to; it must prove its "case-within-a-case." *Environmental Network Corp. v. Goodman Weiss Miller, L.LP.*, 893 N.E.2d 173, 176–78 (Ohio 2008).

Park National's burden to prove its case-within-a-case creates first-party discovery obligations beyond the banking-loss records identified in **Exhibit A**. For instance, Park National

alleges it would have successfully litigated or settled its underlying claims and that prior MDL findings established the oil spill defendants' wrongdoing, leaving only causation and damages. ECF No. 1, PageID.25, ¶¶ 100–101. That assertion itself requires examination via Phase 1 discovery into the particular findings, judgments, admissions, or stipulations upon which it relies; the underlying oil spill defendants allegedly bound by them; and the basis for applying those determinations to Park National's particular causes of action. Under Ohio law, a legal malpractice plaintiff seeking the value of a lost litigation outcome must establish the underlying case within the malpractice action, and this inquiry encompasses the issues necessary to determine what result competent representation would have produced—essentially requiring a trial of all issues in the underlying case. *See Environmental Network*, 893 N.E.2d at 177; *Bressi v. Irwin*, 175 N.E.3d 979, 987 (Ohio Ct. App. 2021) ("[T]he requirement of causation dictates that the merits of his malpractice claim depend on the merits of the underlying claim.").

Accordingly, even before third-party discovery begins, Levin Papantonio would need case within-a-case discovery related to (1) Park National's factual basis for recovery against each oil spill defendant under the asserted OPA, maritime, and Florida-law theories; (2) the applicability and scope of the prior liability determinations; and (3) to the extent genuinely disputed, whether the underlying claims were timely and remained enforceable notwithstanding any separate judgment, release, or waiver. These subjects concern entitlement to the underlying recovery, which would be in addition to the items already addressed above and in **Exhibit A**. Such discovery would require Park National to identify supporting evidence and knowledgeable personnel and would require Levin Papantonio to evaluate that evidence against the underlying claims and defenses.

Park National, having demanded $134 million in damages, certainly knows all this and is presumably prepared to undertake the work. But the cost in dollars and hours will be exorbitant.

And all of the work will be wasted the Court rules for Levin Papantonio on the narrow legal issues presented in the Motion to Dismiss. Under these facts and circumstances, a stay of discovery is appropriate.

**D. Park National will not be unduly prejudiced by a stay.**

Finally, granting a discovery stay will not unduly prejudice Park National.

Park National proposed and signed the tolling agreement with Levin Papantonio, and it has always been Park National's choice to promptly bring this action—or not. Park National chose to wait over six years from the Fifth Circuit's decision ending its case.

In fact, Park National only filed this action after *Levin Papantonio* revoked the tolling agreement. ECF No. 1, PageID.23–24, ¶ 94. Plainly, Park National was in no hurry to get to the courthouse, and had Levin Papantonio not ended the tolling, it would likely have waited even longer. Another few months' delay while the Court resolves the threshold legal issues raised in the Motion to Dismiss will not prejudice Park National.

Further, Park National's claim comes with no hint of any imminent or irreparable harm that requires immediate discovery. This case is in the early stages of litigation, with Defendants requesting a stay in the Rule 26(f) Report. *See Victoria's Secret Stores Brand Mgmt., Inc. v. Bob's Stores LLC*, No. 2:13-CV-1261, 2014 WL 1045994, at *2 (S.D. Ohio Mar. 17, 2014) (recognizing the case was in "the very early stages of litigation" and defendant filed its motion to stay discovery six days after the parties filed their 26(f) Report, which weighed in favor of staying merits discovery while defendant's motion to dismiss was pending).

A stay would not merely postpone the inevitable expense and burden of litigation. It may eliminate the expense altogether or materially narrow the parties, claims, issues, custodians, and or time periods that remain subject to discovery. "Said another way, a discovery stay will reduce

the burden of litigation for both sides and conserve judicial resources." *CentralSquare Techs.*, 2026 WL 1361508, at *2 (granting stay of discovery); *see also Meros v. Dimon*, No. 2:18-CV-00510, 2018 WL 4560596, at *2 (S.D. Ohio Sept. 24, 2018) (granting stay where "threshold legal questions would be substantially vitiated absent a stay," and therefore adjudicating the motion to dismiss before the parties engage in discovery could "preserve both judicial and party resources").

Under such circumstances, this Court has concluded that a plaintiff "will not suffer undue prejudice if discovery is stayed for a short while." *CentralSquare Techs.*, 2026 WL 1361508, at *2 (granting stay of discovery); *see also Meros v. Dimon*, No. 2:18-CV-00510, 2018 WL 4560596, at *2 (S.D. Ohio Sept. 24, 2018) (granting stay where "threshold legal questions would be substantially vitiated absent a stay," and therefore adjudicating the motion to dismiss before the parties engage in discovery could "preserve both judicial and party resources").

## IV. CONCLUSION.

Defendants' Motion to Dismiss presents special circumstances where the Complaint will almost certainly be dismissed because of the straightforward and narrow legal issue regarding the statute of limitations, not to mention the Oil Pollution Act question. The balance of hardships favors a stay, and Park National will not be unduly prejudiced by a stay.

For these reasons, all Defendants respectfully request that the Court grant their request for a stay of discovery. Alternatively, all Defendants seek a conference with the Court to consider the scope of the two-phased discovery proposed in the parties' 26(f) report.

Dated: November 9, 2026

Respectfully submitted,

TAFT STETTINIUS & HOLLISTER LLP

*/s/ David J. Butler*

David J. Butler (0068455) (Trial Attorney)
David C. Roper (0099782)
41 South High Street, Suite 1800
Columbus, Ohio 43215-6106
Telephone: (614) 221-2838
dbutler@taftlaw.com
droper@taftlaw.com

John M. Degnan (*pro hac vice*)
Jason R. Asmus (*pro hac vice*)
Hannah S. Fereshtehkhou (*pro hac vice*)
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2210
Telephone: (612) 977-8400
jdegnan@taftlaw.com
jasmus@taftlaw.com
hfereshtehkhou@taftlaw.com

LEVIN, PAPANTONIO, PROCTOR, BUCHANAN, O'BRIEN, BARR & MOUGEY, P.A.

William F. Cash III (0084482)
316 S. Baylen Street #600
Pensacola, Florida 32502
Telephone: (850)435-7059
Email: bcash@levinlaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2026, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ David J. Butler*